In August 1985 Jerry Morris, Jr., a sixteen year old male, was found to be in need of supervision and was placed in the Eufaula Adolescent Adjustment Center by order of the Juvenile Court of Chilton County pursuant to an agreement of all parties to the proceeding. The court further ordered that under no circumstances were the officials of the center to send the child to another facility or to place the child for a visit or for whatever purpose without the express written consent of the court. The court also decreed that the child was not to be released without the express written consent of the court.
The evidence shows that the officials at the center agreed to accept the child on a Child in Need of Supervision basis, and they agreed not to release the child to his parents until the court so ordered.
The State Mental Health Department, of which the center is an integral part, objects to that portion of the court's decree which ordered the center not to transfer the child to another facility nor to allow the child to visit or do anything else without the express written approval of the court.
Although the record is not very clear on this point, the department submits that the child was committed to its custody pursuant to the provisions of section 12-15-90, Code 1975. Moreover, the department contends that when a child is so committed the provisions of sections 12-15-1 (5) and -1 (17) must be examined to determine the effect of such a commitment. These provisions provide as follows:
 "When used in this chapter, the following words and phrases shall have the following meanings, respectively, unless the context clearly indicates otherwise:
". . .
"(5) Commit. Transfer legal and physical custody.
". . .
 "(17) Legal Custody. A legal status created by court order which vests in a custodian the right to have physical custody of the child and to determine where and with whom he shall live within the state and the right and duty to protect, train and discipline him and to provide him with food, shelter, clothing, education and ordinary medical care, all subject to the powers, rights, duties and responsibilities of the guardian of the person of the child and subject to any residual parental rights and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by the juvenile court."
The department argues that once a child is committed to its custody and care it has the right and duty to treat and rehabilitate the child to the extent of its professional abilities. Otherwise, it contends, why commit the child to its custody in the first place?
The Department of Mental Health and Mental Retardation (Department) was established by section 22-50-2, Code 1975, as a department of the state government. Section 22-50-9, Code 1975, authorizes the Department through its commissioner "to *Page 246 
act in any prudent way to provide mental health services . . . for the people of Alabama." The Department through its commissioner is further "authorized and directed to establish and promulgate reasonable rules, policies, orders and regulations providing details of carrying out its duties and responsibilities." § 22-50-11 (8), Code 1975.
The Department has thus been charged by the legislature to accept minors alleged to be mentally ill and to treat their illness or to confine them so as to prevent the troubled minors from harming themselves or others.
The clear implication of this statutory directive is that the Department is to accept, treat, and care for children with mental problems. Such directive requires the Department to prepare itself for this duty by acquiring the proper facilities and personnel to carry out its specific statutory mission. By giving the Department this mission, the legislature obviously intended that the Department and its personnel have the authority to deal with these children as required by the exigencies of the particular situation. In other words, the Department has been empowered with discretion to deal with these troubled children in a professional manner. Moreover, by authorizing the juvenile court to commit mentally disturbed children to the care and custody of the Department, the legislature obviously intended to allow the juvenile court to avail itself of the Department's facilities and personnel in dealing with mentally disturbed children. See § 12-15-90, Code 1975. However, in so doing, the legislature did not authorize the juvenile court to tell the Department how to exercise the discretion reposed in it. (The allegation before us does not suggest that the Department has abused, neglected, or improperly treated a child committed to its care.)
 "Great care must be exercised by the courts not to usurp the functions of other departments of government. § 43, Constitution 1901. No branch of the government is so responsible for the autonomy of the several governmental units and branches as the judiciary. Accordingly . . . courts cannot and will not interfere with the discretion vested in other units or branches of government."
Finch v. State, 271 Ala. 499, 124 So.2d 825 (1960).
In the present case the juvenile court instructed the Department that it could not take any action with regard to Morris without its prior written approval. Such a restriction placed on the Department by the court effectively invaded and interfered with the Department's exercise of its discretion in trying to treat and care for Morris after he had been committed to its custody. In other words, the juvenile court did not allow the Department to do its job according to the mandate of the legislature but, instead, proceeded to tell the Department how to deal with Morris. Such action is not within the power of the juvenile court at this stage of the proceedings. We are not to be understood as holding that the juvenile court cannot review actions taken by the Department in the treatment and care of mentally disturbed children committed to its care. All we are saying is that the Department must be given an opportunity to carry out its legislative mandate.
That part of the juvenile court's order directing the Department not to transfer Morris to another facility or to treat him in a particular way without prior written approval is set aside and held for naught. The judgment of the juvenile court is reversed and the cause is remanded for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., and HOLMES, J., concur. *Page 247