At issue is the proper scope of the trial court's authority in reviewing certain administrative decisions of the Alabama Department of Mental Health and Mental Retardation (Department). The Department appeals.
The record shows that David Andres petitioned the court for commitment of his daughter (Tracy), age 17, to the custody of the Department pursuant to § 12-15-90, Code 1975. After a proper hearing, the court found that Tracy was severely retarded and likely to cause harm to herself or others if left to remain in the community, thereby meeting the criteria for commitment under § 12-15-90(j). In addition to committal, the court also issued the following directives: that Tracy was committed to the Department's custody "for placement in an appropriate residential facility"; that the Department file a report with the court within thirty days of the order, "setting forth its proposal for placement of said child and its program of treatment"; and that Tracy remain in her parents' home, pending the court's approval of the Department's plan. The court also found that the original treatment plan submitted by the Department at trial was not made in good faith "in view of this child's history of which the Department is fully aware as evidenced by its own records." Finally, the court reserved jurisdiction on the issue of treatment and placement, pending submission of the court-ordered report. The court denied the Department's request for a stay regarding the report during the pendency of this appeal. The report was apparently submitted to the court in due course, but subsequent to the filing of the notice of appeal and is therefore not a part of the record under review.
The Department contends (1) that the evidence does not support an involuntary commitment, and (2) that the court's order regarding the terms of treatment and placement encroaches on the discretion lodged in the Department to provide for those persons committed to its custody.
We find substantial evidence to support the court's order committing Tracy to the custody of the Department. The evidence included diagnoses of severe retardation and autism and testimony of several overt acts by Tracy which endangered herself and others. Given the ore tenus presumption that the trial court's findings are correct, the evidence more than supports the conclusion that the criteria for commitment under § 12-15-90(j) were met. Ala. Digest, Appeal and Error, Key No. 1008.1(6) (1982). The Department's argument that the court erred when it found Tracy to pose a real and present danger to herself and others, yet allowed her to remain in her parents' home after such a finding, is misplaced. The court was obviously interested in providing for an adequate placement of Tracy from the outset and fashioned its order to serve that end. Whether or not the court exceeded its authority to review actions of the Department by so fashioning its order leads to the second, and more troubling, issue of this case.
In In re Morris, 491 So.2d 244, 246 (Ala.Civ.App. 1986), Judge Bradley wrote for the court and stated the following:
 "In the present case the juvenile court instructed the Department that it could not take any action with regard to Morris without its prior written approval. Such a restriction placed on the Department by the court effectively invaded and interfered with the Department's exercise of its discretion in trying to treat and care for Morris after he had been committed to its custody. In other words, the juvenile court did not allow the Department to do its job according to the mandate of the legislature but, instead, proceeded to tell the Department how to deal with Morris. Such action is not within the power of the juvenile court at this stage of the proceedings. We are not to be understood as holding that the juvenile court cannot review actions taken by the Department in the treatment and care of mentally disturbed *Page 11 
children committed to its care. All we are saying is that the Department must be given an opportunity to carry out its legislative mandate." (Emphasis supplied.)
The legislative mandate referred to is found at § 22-50-9 and provides that the Department is "authorized to act in any prudent way to provide . . . mental retardation services for the people of Alabama." Section 22-50-11(8) provides that the Department is "authorized and directed to establish and promulgate reasonable rules, policies, orders and regulations providing details of carrying out its duties and responsibilities." In a recent case, the supreme court held that juvenile courts cannot commit a child to the custody of the Department and then order that the child be placed in aprivate psychiatric facility. Ex parte Department of MentalHealth, State of Alabama, 511 So.2d 181 (Ala. 1987). The court stated that such a directive would violate those provisions of the state constitution dealing with the doctrine of the separation of powers.
The question presented to this court, therefore, centers on the power of the trial court to review (and, in this case, reject) proposed plans of treatment prepared by the Department.
Clearly, the courts have a role in seeing that an involuntarily committed person's constitutional right to treatment is being provided for. See generally Wyatt v.Aderholt, 503 F.2d 1305 (5th Cir. 1974). That case was one of several that addressed the judiciary's competence to determine whether treatment was medically or constitutionally adequate.Also see Wyatt v. Stickney, 325 F. Supp. 781 (M.D.Ala. 1971);Donaldson v. O'Connor, 493 F.2d 507 (5th Cir. 1974).
The history of Wyatt v. Stickney is familiar. After hearing voluminous testimony on the conditions then existing in several of Alabama's mental health institutions, the federal court became intricately involved in fashioning institution-wide standards of minimally adequate care and treatment of those in the custody of the Department. The intervention by the federal court in the administration of the Department respecting adequate care and treatment of those persons in its custody followed a documented history of substandard practices by the Department. In the instant case, the court has involved itself in the administrative decision-making of the Department with respect to proposed plans of treatment and placement of a child committed to the custody of the Department.
We hardly need to state that the polestar in cases involving the custody of juveniles is the best interests of the child.Ex parte Department of Mental Health, supra. Section 12-15-90(m) gives the committing court continuing jurisdiction over those minors "for so long as the minor or child is in the custody of the department of mental health and mental retardation." This continuing responsibility of the court to the child's best interests overlaps the Department's legislative authority to care for and treat minors in its custody. The difficulty posed by this case is thus seen to be one involving a conflict between two separate branches of state government on a matter whose outcome, at least in some degree, is entrusted to the authority of both of them. In this case we are called upon to decide whether the trial court has exceeded its authority in directing treatment of the child after she was committed but prior to her being placed in the actual custody of the Department. In other words, did the court, under the facts of this case, give the Department an opportunity to carry out its legislative mandate as required by In re Morris, supra?
Section 12-15-90(d)(3) provides in pertinent part the following:
 "Not less than 24 hours prior to the final hearing, said mental health department shall notify the district court whether adequate facilities are available for the minor or child and to which facility the minor or child should be sent if the district judge should determine that such minor or child is to be committed. No person shall be accepted if the facility does not have adequate facilities available or if acceptance would result in an overcrowded condition." *Page 12 
A troubling aspect of this case concerns the trial court's finding of bad faith on the part of the Department respecting its proposed plan of treatment and placement of the child committed to its custody in view of, the court stated, the Department's knowledge of the child's history and its own recommendations regarding her placement. That history involved temporary custody of the child with the Department, at which time the child's severe condition was documented by the Department. Correspondence between employees of the Department indicates that the Department made efforts to have the child placed in a private facility specializing in the care and treatment of autistic children. A few months prior to the trial of this case, that placement was disapproved apparently on grounds of budgetary constraints. The court focused at trial on the reversal of the Department's planned placement as evidence of bad faith. The court also noted the failure of an evaluation of the child being made prior to trial. Mainly, the court evidenced notable irritation at the Department's filing of the following "Plan of Habilitation" on the day set for trial:
 "Based on the facts that Ms. Andres is relatively well adjusted in her current school situation and she has difficulty adjusting to change, it is felt the following plan is appropriate to meet her need for a structured residential environment:
 "1. Admission to Partlow for an exceptional case admission evaluation
 "2. Reside in Unit II, Cottage 8 — This cottage has a population which is Ms. Andres' chronological, behavioral and functioning peers.
"3. Continued attendance at Oak Hill School
 "4. Completion of all evaluations within a 30-day period
 "5. Evaluation will be utilized as basis of developing a specific plan for Ms. Andres."
Our reading of the applicable statutes, including § 12-15-90(d)(3), lodges the discretion of determining an appropriate placement with the Department. From the evidence before the court, we cannot determine that the above plan is anything other than a reasonable exercise of the Department's discretion. Although the statute provides that the Department submit to the court its decision regarding placement, we cannot read the statute to say otherwise than that decision is to be made by the Department. This is not a Wyatt v. Stickney
situation. The child has not yet been committed to the care of the Department. In such case, the courts may not proscribe to the Department the terms of placement or treatment. In the event of allegations of abuse, neglect, or improper treatment once the child is committed, however, the court would then have the power to determine if the allegations were justified. As inIn re Morris, at this stage of the proceedings in this case, the court overstepped its authority in attempting to tell the Department how to deal with a matter presumptively left to its expertise as the agency charged with its administration. The wishes or desires of the parents of the child that she be placed or treated at a particular institution, though due consideration, are not controlling on the Department.
Accordingly, the trial court's order of committal is affirmed. That part of the court's order proscribing the Department's discretion in formulating a plan for the child's treatment and placement is reversed and remanded for entry of a judgment consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and is hereby adopted as that of the court.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
BRADLEY, P.J., and INGRAM, J., concur.
HOLMES, J., concurs in the result. *Page 13