PER CURIAM.
The Montgomery County Department of Human Resources (“the County DHR”) and the Alabama Department of Human *33 Resources (“the State DHR”)[1] petition this court to issue a writ of mandamus ordering the Montgomery Juvenile Court to vacate two orders — one entered on November 13, 2007, and one entered on November 27, 2007. The petitioners seek to have the November 13 order vacated insofar as it directed (1) that D.R.S., a 17-year-old girl who is in the legal custody of the County DHR, be placed in the National Deaf Academy (“the NDA”) in Mt. Dora, Florida, or an equivalent facility, (2) that the State of Alabama pay the expenses of D.R.S. at the NDA, and (3) that Liz Hill, an employee of the Alabama Department of Mental Health and Mental Retardation (“the Department”), be reinstated as the therapist for D.R.S. The petitioners seek to have the November 27 order, which denied them a transcript of an evidentiary hearing, vacated. We grant the petition in part and deny the petition in part.
D.R.S. is deaf and mentally retarded. She also suffers from diabetes, mental illness, and alopecia. The record indicates that the juvenile court has exercised jurisdiction over D.R.S. for a number of years. During some of those years, D.R.S. was in the legal custody of various relatives. The most recent proceedings involving D.R.S. began on May 23, 2007, when the County DHR petitioned the juvenile court to find that D.R.S., who was then in the legal custody of her paternal aunt, was dependent and to award custody of D.R.S. to the County DHR. Upon the filing of the County DHR’s petition, the juvenile court appointed an attorney to serve as D.R.S.’s guardian ad litem. On May 30, 2007, following an expedited hearing, the juvenile court found that D.R.S. was dependent and granted the County DHR legal custody of D.R.S.
The County DHR made arrangements for D.R.S. to reside temporarily at the NDA while it sought joint-agency funding from the “State Multiple Needs Team” for a long-term placement for D.R.S. On June 15, 2007, the juvenile court entered an order requiring the County DHR to give the juvenile court 30 days’ written notice of any proposed change in D.R.S.’s placement.
On June 22, 2007, the State DHR, acting on behalf of the County DHR (hereinafter sometimes collectively referred to as “DHR”), notified the juvenile court in writing of the County DHR’s intent to change D.R.S.’s placement from the NDA to Bay-pointe Children’s Residential Services (“Baypointe”) in Mobile, Alabama, and moved the juvenile court to amend its June 15, 2007, order to allow the change in placement immediately. As grounds for seeking the immediate change in placement, DHR alleged that Baypointe could provide services that were equivalent to the NDA; that the State Multiple Needs Team had approved joint-agency funding for residential placement of D.R.S. at Bay-pointe at a cost not to exceed $435 per day from the date of admission through September 30, 2007; and that Baypointe then had a space available for D.R.S. but that it might not have space available at a later date. The motion was accompanied by a brief asserting that the juvenile court lacked authority to condition placement of *34 D.R.S. on the juvenile court’s prior approval; that the constitutional doctrine of separation of powers prohibited the juvenile court from preventing the placement of D.R.S. at Baypointe; that the juvenile court lacked the authority to control the expenditure of State funds by directing that State agencies place D.R.S. at a particular facility; that the juvenile court lacked authority to require State agencies to incur the cost of providing care for a child at a private facility; and that the counties of the State are statutorily responsible for the care of indigent children directed by a juvenile court.
An entry made by the juvenile court on the case-action summary on June 26, 2007, indicates that on that date the juvenile court held a hearing on DHR’s motion to amend the juvenile court’s June 15, 2007, order and made a finding that it was not in the best interest of D.R.S. to be moved from the NDA.
On July 27, 2007, the guardian ad litem moved the juvenile court to find the County DHR in contempt. As grounds, the guardian ad litem alleged, among other things, (1) that the County DHR had moved D.R.S. to Baypointe on July 25, 2007; (2) that, contrary to DHR’s representations to the juvenile court, Baypointe did not provide services that were equivalent to those provided by the NDA; and (8) that Baypointe was an unsuitable placement for D.R.S. The County DHR denied the allegations in the guardian ad litem’s motion.
Following an evidentiary hearing, the juvenile court entered the November 13 order. That order found that D.R.S. had thrived while she was at the NDA and that she had been mistreated while she was at Baypointe. Based on those findings, the juvenile court in its November 13 order concluded, in pertinent part:
“1. That the Court specifically finds that the Alabama Department of Human Resources has not made reasonable efforts to assure the health, safety and educational and medical needs of [D.R.S.] by placing her at Baypointe. Despite DHR’s assertion that this Court cannot tell DHR where to place a child, the Court believes that when DHR fails or refuses to protect a child from harm or mistreatment, the Circuit Court must step in to stop the continued medical maltreatment, over-medication and personal violations of [D.R.S.]
“2. That [D.R.S.] shall be immediately transported to Mt. Dora, Florida to the National Deaf Academy (or other facility equivalent to the National Deaf Academy) where she shall remain at the expense of the State of Alabama until such time as she is able to function and communicate independently. It is undisputed that presently Alabama has no such facility within its borders.
[[Image here]]
“7. That the Court orders that Mrs. Liz Hill be reinstated as therapist for [D.R.S.] by [the Department], so as to allow her to continue her work with this multi-needs child. Ms. Hill has clearly made progress and has achieved a level of trust which cannot be duplicated quickly. It cannot be in this child’s best interest to have Ms. Hill summarily removed from interaction with [D.R.S.]”
(Emphasis added.)
DHR then requested that the court reporter who recorded the evidentiary hearing provide it with a transcript of the evidentiary hearing; however, the court reporter informed DHR that it would have to obtain a court order authorizing the court reporter to provide it with a transcript. Accordingly, DHR moved the juvenile court to authorize the court reporter to provide it with a transcript. The juve *35 nile court denied that motion. DHR then petitioned this court to issue a writ of mandamus.

Standard of Reviere

The Alabama Supreme Court stated the standard for the issuance of a writ of mandamus in Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995):
“Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
A petition for the writ of mandamus is a proper method for challenging a juvenile court’s order requiring a State agency to pay the expense of placing a child committed to its custody in a private facility. See, e.g., In re D.M., 738 So.2d 898, 902 (Ala.Civ.App.1999).
I. The Entity Responsible for Paying for the Child’s Care
The petitioners first argue that they have a clear legal right to a writ of mandamus directing the juvenile court to vacate its November 13 order insofar as that order required the State of Alabama to pay the expenses of D.R.S. at the NDA. The petitioners assert that § 12-15-10, Ala.Code 1975, and the separation-of-powers provisions of the Alabama Constitution mandate that Montgomery County rather than the State of Alabama is the entity responsible for the cost of D.R.S.’s care. We agree.
Section 12-15-10, a part of the Alabama Juvenile Justice Act, which deals with proceedings in the juvenile court, provides, in pertinent part:
“All expenses necessary or appropriate to the carrying out of the purposes and intent of this chapter and all expenses of maintenance and care of children that may be incurred by order of the court in carrying out the provisions and intent of this chapter, except costs paid by parents, guardians, or trustees, court costs as provided by law and attorney fees shall be valid charges and preferred claims against the county and shall be paid by the county treasurer when itemized and sworn to by the creditor or other persons knowing the facts in the ease and approved by the court.”
(Emphasis added.)
In Ex parte Department of Mental Health, 511 So.2d 181 (Ala.1987), the Alabama Supreme Court held that an order of the Houston Juvenile Court directing the Department to place a child at Charter Woods Hospital, a private facility, for a psychiatric evaluation to be paid for by the Department violated § 12-15-10 and the separation-of-powers provisions of the Alabama Constitution. The court stated:
“[In § 12-15-10], the Legislature expressly designates the county as the entity responsible for maintenance and care. Therefore, according to our statutory scheme, the county, not the State or a department thereof, is responsible for any monies due Charter Woods Hospital.
“The Court of Civil Appeals’ judgment ordering [the Department] to pay for the child’s care and treatment not only runs afoul of § 12-15-10, but also violates §§ 42 and 43 of the Constitution of Alabama of 1901, which sections deal with the doctrine of separation of powers.
“Although the Legislature granted authority to the juvenile courts to commit children to the custody of [the Department] and authority to avail themselves of the facilities and personnel of [the *36 Department], the Legislature did not confer upon the juvenile courts the authority to commit a child to the custody of [the Department] and then order that the child be placed in a private psychiatric facility. See Code of Alabama 1975, § 12-15-90. Had the Legislature intended to grant authority to juvenile courts to commit a child to the custody of [the Department] and then order that the child be placed in a private psychiatric facility at the expense of [the Department], it would have been a simple matter for the Legislature to so provide. The Legislature’s power to determine the appropriations for each state agency cannot be usurped by either of the other branches of government. [The Department] is mandated by the Legislature to act, through its commissioner, ‘in any prudent way to provide mental health services ... for the people of Alabama.’ Code of Alabama 1975, § 22-50-1, et seq. [The Department] is therefore charged by the Legislature to accept minors alleged to be mentally ill and treat them by means of its various programs and facilities. Nowhere in any of these statutes does the Legislature state that anyone other than [the Department] is authorized to care for and treat these children.
“Furthermore, in In re McCain, 348 So.2d 780 (Ala.1977), this Court was presented with a situation substantially similar to the one sub judice. There, the trial court had made McCain a ward of the court, placed him in an out-of-state mental health center, and required [the Department] to pay for McCain’s care and treatment. In striking down the court’s order, this Court stated:
‘“To allow this provision of Judge Davis’s order to stand would allow the unrecoverable expenditure of State funds from an appropriation not intended for child care and from which Judge Davis has no authority to direct expenditure of funds for child care.’
“348 So.2d at 782. The rationale behind this Court’s decision in McCain is equally sound in this case. We find no merit in the argument that the case before us is distinguishable from McCain because of the fact that in McCain, the Court labeled as ‘court costs’ the amount to be paid by [the Department], Whatever their designation, costs for care and treatment of a minor placed in a private institution cannot be charged to [the Department], Therefore, that portion of the Court of Civil Appeals’ opinion that held [the Department] responsible for the child’s expenses while he was in Charter Woods Hospital is erroneous and it is hereby reversed.”
511 So.2d at 183-84. See also In re N.D.M., 837 So.2d 316 (Ala.Civ.App.2002) (holding that the county must pay the expenses of an indigent minor committed to the custody of the Department); In re D.M., 738 So.2d at 901 (plurality opinion) (stating that “[o]ur supreme court has held that neither § 12-15-71(c)(4) nor § 12-15-70 authorizes the juvenile court to require a department of the state, as opposed to its counties, to pay for mental health treatment of the child when the parents or other persons legally obligated to care for the child cannot”); Alabama Dep’t of Mental Health & Mental Retardation v. State, 718 So.2d 74, 76 (Ala.Civ.App.1998) (stating that “Ala.Code 1975, § 12-15-10, requires the appropriate county to bear the expense for care and treatment of indigent juveniles”); Ex parte State Dep’t of Human Res., 716 So.2d 717, 718 (Ala.Civ.App.1998) (stating that “if the child’s parents, guardians, or trustees are unable to pay the medical expenses, the county is obligated to do so”); Ex parte State Dep’t of Mental Health & Mental Retardation, 555 So.2d 1132, 1133 (Ala.Civ.App.1989) (stat *37 ing that “if the child’s parents or others legally obligated are financially unable to pay such expenses, the county is statutorily obligated to do so”); and In re T.L.H., 607 So.2d 295 (Ala.Civ.App.1992) (same).
The petitioners have established their right to a writ of mandamus directing the juvenile court to vacate its November 13 order insofar as that order required the State of Alabama to pay the expense of placing D.R.S. at the NDA.
II. The Child’s Placement and Therapist
Next, the petitioners contend that they are entitled to a writ of mandamus directing the juvenile court to vacate its November 13 order insofar as that order required that D.R.S. be placed at the NDA and that Liz Hill be reinstated as her therapist. Citing In re Morris, 491 So.2d 244 (Ala.Civ.App.1986), the petitioners argue that the juvenile court overstepped the bounds of Article III, §§42 and 43, of the Alabama Constitution of 1901 (the separation-of-powers provisions) when it specified the facility and the therapist that were to provide care for D.R.S., thereby interfering, they say, with DHR’s discretion in caring for a child placed in its custody.
In Mortis, the juvenile court ordered that a child in need of supervision be placed in the Eufaula Adolescent Adjustment Center, a facility operated by the Department. The juvenile court further ordered that, under no circumstances, was the child (1) to be sent to another facility, (2) to be placed for a visit, or (3) to be released without the express written consent of the court. The Department appealed to this court, arguing that the juvenile court had overstepped its constitutional authority by adding the three conditions to the placement order. This court stated:
“[T]he Department has been empowered with discretion to deal with ... troubled children in a professional manner. Moreover, by authorizing the juvenile court to commit mentally disturbed children to the care and custody of the Department, the legislature obviously intended to allow the juvenile court to avail itself of the Department’s facilities and personnel in dealing with mentally disturbed children. See § 12-15-90, Code 1975. However, in so doing, the legislature did not authorize the juvenile court to tell the Department how to exercise the discretion reposed in it. (The allegation before us does not suggest that the Department has abused, neglected, or improperly treated a child committed to its care.)
“ ‘Great care must be exercised by the courts not to usurp the functions of other departments of government. § 43, Constitution 1901. No branch of the government is so responsible for the autonomy of the several governmental units and branches as the judiciary. Accordingly ... courts cannot and will not interfere with the discretion vested in other units or branches of government.’
“Finch v. State, 271 Ala. 499, 124 So.2d 825 (1960).
“In the present case the juvenile court instructed the Department that it could not take any action with regard to Morris without its prior written approval. Such a restriction placed on the Department by the court effectively invaded and interfered with the Department’s exercise of its discretion in trying to treat and care for Morris after he had been committed to its custody. In other words, the juvenile court did not allow the Department to do its job according to the mandate of the legislature but, instead, proceeded to tell the Department how to deal with Morris. Such action is not within the power of the *38 juvenile court at this stage of the proceedings. We are not to be understood as holding that the juvenile court cannot review actions taken by the Department in the treatment and care of mentally disturbed children committed to its care. All we are saying is that the Department must be given an opportunity to carry out its legislative mandate.”
491 So.2d at 246 (emphasis added). The instant case is distinguishable from Moms because in this case the juvenile court did not dictate to DHR how it was to care for D.R.S. without first giving DHR the opportunity to carry out its legislative mandate. As this court noted in Moms, a juvenile court has the authority to review a State agency’s care of a child committed to its custody and to direct the agency to change the child’s care if the court determines that the care that the child is receiving is not in the child’s best interest.
The conclusion of the dissent in this case that the juvenile court violated the separation-of-powers provisions of the Alabama Constitution when it specified the facility and the therapist that were to provide care for D.R.S. is wrong for two reasons. First, the juvenile court’s order does not specify that the child be returned to the NDA. Instead, the order states that the child shall be “immediately transported to Mt. Dora, Florida to the National Deaf Academy (or other facility equivalent to the National Deaf Academy).” (Emphasis added.) Second, Ex parte James, 836 So.2d 813 (Ala.2002), cited by the dissent, is not authority for the separation-of-powers issue presented in this case.
In James, the Montgomery Circuit Court held that Alabama’s method of funding its public-education system was unconstitutional and ordered the legislature to formulate a constitutionally adequate system of school financing. The Alabama Supreme Court held that the circuit coui't’s judgment violated the constitutional separation-of-powers provisions because “the duty to fund Alabama’s public schools is a duty that — for over 125 years — the people of this State have rested squarely upon the shoulders of the Legislature.” 836 So.2d at 815 (footnote omitted; emphasis added). See Article XIV, § 260, Ala. Const.1901.
In contest, the duty of the juvenile court to determine whether a minor child’s best interests are being protected overlaps with the duty of a State agency to care for and treat juveniles who have been committed to its custody. See Alabama Dep’t of Mental Health & Mental Retardation v. Andres, 515 So.2d 9 (Ala.Civ.App.1987). In Andres, this court stated:
“We hardly need to state that the polestar in cases involving the custody of juveniles is the best interests of the child. Section 12-15-90(m)[, Ala.Code 1975,] gives the committing court continuing jurisdiction over those minors ‘for so long as the minor or child is in the custody of the department of mental health and mental retardation.’ This continuing responsibility of the court to the child’s best interests overlaps the Department’s legislative authority to care for and treat minors in its custody. The difficulty posed by this case is thus seen to be one involving a conflict between two separate branches of state government on a matter whose outcome, at least in some degree, is entrusted to the authority of both of them.”
515 So.2d at 11 (internal citation omitted). In Andres, this court was required to determine whether the juvenile court had “exceeded its authority in directing treatment of [a] child after she was committed but prior to her being placed in the actual custody of the Department” or, as the court phrased the question, “[D]id the court, under the facts of this case, give the *39 Department an opportunity to carry out its legislative mandate as required by In re Morris, supra? ” Id. We ultimately held that the juvenile court had exceeded its authority by rejecting the Department’s treatment plan for the child before the plan was ever implemented.
That is not the case here. The State Multiple Needs Team, with the approval of DHR, initially recommended that D.R.S. be placed at the NDA. The juvenile court specifically found that D.R.S had been thriving at the NDA but that, after DHR’s plan to transfer D.R.S. to Baypointe was implemented, the child had been mistreated and had regressed. In contrast to Moms, the juvenile court’s order in this case “does ... suggest that [DHR] has abused, neglected, or improperly treated a child committed to its care.”
The juvenile court’s November 13 order did not fail to allow DHR to “carry out its legislative mandate.” Instead, the juvenile court reviewed D.R.S.’s progress under the transfer plan that had been implemented, determined that the transfer plan was not serving D.R.S.’s best interests, and returned the parties to the previous plan that, all parties acknowledged, had been working. In essence, the juvenile court fashioned an equitable remedy — the rescission of DHR’s transfer plan and the restoration of the parties to the status quo ante, see, e.g., Leonard v. Terminix Int’l Co., 854 So.2d 529 (Ala.2002), and Brindley v. Brindley, 197 Ala. 221, 72 So. 497 (1916)— an action that fell within the juvenile court’s authority to review the service plan for a multiple-needs child pursuant to § 12 — 15—71(h)(1), Ala.Code 1975, and did not encroach on the discretion of the State agency that had, initially, developed that very plan.
Accordingly, we hold that the petitioners have not established their right to a writ of mandamus directing the juvenile court to vacate its November 13 order insofar as that order required that D.R.S. be placed at the NDA and that Liz Hill be reinstated as her therapist.
III. The Transcript of the Evidentiary Hearing
Finally, the petitioners argue that they are entitled to a writ of mandamus ordering the juvenile court to vacate its November 27 order denying them a transcript of the evidentiary hearing because, they say, as parties to the proceeding, they are entitled to a transcript under Rule 20(B), Ala. R. Juv. P., upon requesting one and paying for it. In pertinent part, Rule 20(B) provides:
“(B) Testimony shall be transcribed by the person designated by the juvenile court judge; it shall be transcribed only upon order of the court or upon the request of any party at the party’s own expense. ...”
(Emphasis added.)
Rule 20(B) clearly provides that any party to a proceeding in juvenile court is entitled to a transcript of an evidentiary hearing upon requesting it and paying for it. The petitioners were parties to this proceeding in the juvenile court. Therefore, the juvenile court did not have the authority under Rule 20(B) to deny the petitioners a transcript of the evidentiary hearing. Their motion seeking a transcript states: “According to ... Alabama Rule[ ] of Juvenile Procedure 20(B) ... ‘Testimony shall be transcribed by the person designated by the juvenile court judge; it shall be transcribed only upon order of the court or upon the request of any part at the party’s own expense.” ’ This language implied that the petitioners were ready, willing, and able to comply with Rule 20(B), which requires that a party pay for the transcript. Moreover, nothing in Rule 20(B) requires that a party must expressly offer to pay for the transcript *40 when the party requests it; it merely requires that the party indeed pay for it. Given the language in the petitioners’ motion implying that they were willing to comply with Rule 20(B), the absence from their motion of an express offer to pay for the transcript did not justify the juvenile court’s denying their motion. Accordingly, we hold that the petitioners have established their right to a writ of mandamus directing the juvenile court to vacate its order denying them a transcript of the evidentiary hearing.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.
BRYAN, J., concurs in part and dissents in part, with writing.

. The County DHR is a State agency. See Ex parte Department of Human Res., 716 So.2d 717, 718 (Ala.Civ.App.1998).
"The county departments of human resources serve as agents of the State Department of Human Resources; the State Department is empowered to designate the county as its agent and to assist the counties in their various duties when necessary. See § 38-6-2, Ala.Code 1975; Admin. Rules 660-1-2 — 01(g) and 660-1-2-.02.”
State Dep't of Human Res. v. Estate of Harris, 857 So.2d 818, 819 n. 1 (Ala.Civ.App.2002).