DONALDSON, Judge.
The Limestone County Department of Human Resources ("DHR") petitions this court for writs of mandamus directing the Limestone Juvenile Court ("the juvenile court") to vacate orders entered in both of the underlying cases on August 25, 2017, and September 5, 2017. For the reasons discussed below, in each of these consolidated mandamus proceedings, we grant the petition in part and deny the petition in part.
Facts and Procedural History
A.H. ("the mother") and J.H. ("the father") are the parents of T.K.H., born September 17, 2010, and A.S.H., born October 7, 2012 (T.K.H. and A.S.H. are hereinafter referred to collectively as "the children"). In March 2016, the children were found to be dependent by the juvenile court and were placed in the custody of DHR. On February 2, 2017, after a hearing, the juvenile court entered orders that, among other things, identified adoption as the permanency plan for both children.
*213 See § 12-15-315(a), Ala. Code 1975 (requiring, among other things, annual permanency hearings for the purpose of determining a permanency plan for a child removed from his or her home).
On February 16, 2017, DHR filed petitions to terminate the parental rights of the mother and the father to A.S.H. and T.K.H. On April 26, 2017, after a trial, the juvenile court entered orders that terminated the parental rights of the mother and the father to both children and placed the children in DHR's permanent legal custody.
On August 21, 2017, the juvenile court held a hearing ("the permanency review hearing") pursuant to § 12-15-321, Ala. Code 1975, which provides: "Where the juvenile court has terminated the parental rights and has placed legal custody of the child with the Department of Human Resources ..., the juvenile court, at least annually, shall review the circumstances of the child to determine what efforts have been made to achieve permanency for the child." On August 25, 2017, the juvenile court entered substantively similar orders in the children's cases, providing, in part:[1]
"THIS CAUSE came before the Court on August 21, 2017, for a permanency review hearing. Present in Court were the Hon. Michael Sizemore representing the Limestone County Department of Human Resources; the Guardian ad litem for the minor child[ren], the Hon. Eddie Alley who, after having met with the child[ren], waived the child[ren]'s presence at the hearing; and the foster parents for [one] of the child[ren], [T.H. and D.H.].
"On April 26, 2017, this Court entered an Order terminating the parental rights of the [children's] parents and placing the [children's] permanent legal and physical custody with [DHR]. The matter is presently before the Court to review the efforts of [DHR] to achieve adoption of the child[ren] and to ensure that [DHR] is using reasonable efforts to achieve the permanency plan for the child[ren], which as stated by [DHR], is adoption.
"....
"The Court having carefully considered the sworn testimony makes the following findings:
"History
"This action began as a dependency petition filed by [DHR]. The [children] were removed from the custody of the parents and placed in foster care at the beginning of the case. [The children were] initially placed in a foster home [together].
"Throughout the pendency of this case, the custody of the child[ren] has remained with [DHR]. At some point the [children] were placed in separated foster homes. In hindsight it appears that this separation was not necessary; however at the time it was reasonable for [DHR] to separate the children given the information [DHR] then had.
"It is clear to this Court that as this case progressed [A.S.H.'s] foster parents, the [R.'s], went to great lengths to obstruct any meaningful contact between [A.S.H.] and [T.K.H.]. It is worth noting that the [R.'s] have never appeared before this Court at any hearing concerning the minor child. [DHR] worked to facilitate visitation between the [children] and explore the possibility *214 of placing the [children] together. [DHR] clearly understands the great benefit to [each] child that comes from a meaningful relationship with her sibling. It is clear from the testimony that the [R.'s] and the State Department [of Human Resources ('the State DHR') located in Montgomery] worked at every turn to disrupt a meaningful relationship between the [children]. This Court is not aware of exactly what interest the State DHR has in this case, but the Court intends to find out the reasons for [the State DHR's] interference in this Limestone County Case.
"In March of 2017 it was determined, by DHR, that [A.S.H.] needed to be placed in a therapeutic foster home. However, Nancy Buckner and others from 'State' DHR intervened and prevented the child being so placed. In fact, as of this hearing [A.S.H.] has yet to be placed in a therapeutic foster home.
"On April 26, 2017, this Court terminated the parental rights of the parents, granted permanent custody of the [children] to DHR, and set this matter for a permanency review hearing.
"On July 27, 2017, in response to a motion filed by the Guardian ad Litem, this Court Ordered visitation to occur between [A.S.H.] and [T.K.H.] 'within seven day[s] of this Order.' However, due to the interference of Nancy Buckner and others from [the State DHR], this visitation did not actually occur until August 8, 2017. Due to the actions of the State [DHR], [DHR] was in contempt of this Court's Order on visitation for five days. Fortunately for DHR, no Petition for Contempt has yet been filed before this Court related to this matter.
"Discussion
"As of this hearing [A.S.H.] was still not placed in a therapeutic foster home, was not placed in a home with [T.K.H.], and continued to be placed with foster parents who refuse to participate in [A.S.H.'s] therapy. All of these facts are in direct contradiction of DHR 'policy.' Apparently unhappy with the resolve of [DHR] to pursue the best interest of [the children], Nancy Buckner and others from [the State DHR] had directed [DHR] as to how this case will be handled. When [DHR] did not fall into line quickly enough, [the State DHR] decided to assign the case to the Madison County [Department of Human Resources ('the Madison County DHR') ]. This Court trusts that the Madison County [DHR] has the good sense to continue to work for the best interests of [the children], rather than the selfish interests of a few adults even though one of these adults is the Commissioner of [the State] DHR.
"It is clear to this Court that the intervention of Nancy Buckner and others from [the] State DHR has done nothing to further the permanency plan of the minor child[ren]. In fact, the actions of the Commissioner and others have worked in direct opposition to the best interests of the minor child[ren]. [DHR] has worked tirelessly to benefit [the children]; however, they have found themselves, at every turn, undone by orders from [the State DHR], carved into stone by Commissioner Buckner.
"Based upon the evidence presented this Court FINDS and ORDERS that the State [DHR] has failed to use reasonable efforts to achieve the permanency plan developed for the minor child[ren].
"The Court FURTHER FINDS that it is in the best interest of [A.S.H.] that she be placed in a therapeutic foster home.
"The Court FURTHER FINDS that it is in the best interest of [T.K.H.] that *215 she be placed in a pre-adoptive foster home with [A.S.H.] immediately.
"It is HEREBY ORDERED that this matter is set for a permanency review hearing on November 2, 2017, at 9:00 A.M.
"It is FURTHER ORDERED that Nancy Buckner shall personally appear at the next permanency hearing to fully explain to the Court her special interest in this case. It is time for the wizard to come out from behind the curtain.
"It is FURTHER ORDERED that, prior to the next hearing, Nancy Buckner shall coordinate with the Guardian ad Litem to personally meet with [each] minor child and discuss with her, in an age appropriate manner, her wishes regarding contact with her sister. If the Commissioner intends to make decisions for the child[ren], then she should personally meet with the child[ren] and be well informed prior to said decisions."
(Capitalization, emphasis, and bold typeface in original.) On September 1, 2017, DHR filed motions seeking transcription of both the August 21, 2017, permanency review hearing and the termination-parental-rights trial held on April 26, 2017. On September 4, 2017, DHR filed motions seeking to alter, amend, or vacate the juvenile court's August 25, 2017, orders.[2] On September 5, 2017, the juvenile court entered separate orders in which it denied DHR's motions for transcription and to alter, amend, or vacate the August 25, 2017, orders. On September 7, 2017, DHR filed amended motions, to which it attached exhibits, seeking to alter amend, or vacate the August 25, 2017, orders; those motions were denied the same day. On September 7, 2017, DHR filed motions seeking to stay enforcement of the juvenile court's August 25, 2017, orders, which were also denied the same day.
On September 8, 2017, DHR timely filed a single petition for the writ of mandamus in this court, referencing both of the underlying cases. This court docketed two separate mandamus proceedings and then ordered that the proceedings be consolidated. See Rule 21(a)(3), Ala. R. App. P., and Ex parte R.W., 41 So.3d 800, 804 (Ala. Civ. App. 2009) (explaining that the presumptively reasonable time for filing a petition for the writ of mandamus is the same as the time for taking an appeal and that, in a juvenile action, the presumptively reasonable time is within 14 days of the entry of the challenged order). In its petition, DHR claims, among other things, that the juvenile court had no jurisdiction to enter certain portions of the August 25, 2017, orders. The children's guardian ad litem filed an answer in opposition to DHR's petition. No other answers were filed.
Standard of Review
" ' "Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." ' Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala. 2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995) ). A petition for a writ of mandamus is an appropriate remedy for challenging an interlocutory order. Ex parte McInnis, 820 So.2d 795 (Ala. 2001)...."
*216 Ex parte A.M.P., 997 So.2d 1008, 1014 (Ala. 2008). Mandamus is the appropriate remedy to compel a trial court to vacate an interlocutory order for lack of jurisdiction. See Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala. 2000) ("[A] lack of subject-matter jurisdiction may be raised at any time, and ... the question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.").
Discussion
In its petition, DHR contends that it has the exclusive authority under § 12-15-320(b)(1), Ala. Code 1975, to determine the children's permanency plan and that the juvenile court has no jurisdiction to order certain relief against DHR in the August 25 permanency review orders. Pursuant to § 12-15-320(b)(1), "[a]n order of the juvenile court which terminates parental rights and awards permanent legal custody to the Department of Human Resources ... shall mean that the Department of Human Resources ... shall have authority to make permanent plans for the child, including the authority to place for adoption and consent to adoption." DHR argues that, pursuant to § 12-15-321, the juvenile court had the authority to review the children's circumstances to determine what efforts had been made to achieve permanency for the children, but not the authority to compel DHR to take specific action. DHR further argues that the juvenile court's permanency review orders usurp its authority by making "findings about the children which contravene the case plan set out in the [Individualized Service Plans] for the children to be adopted by their current foster parents." DHR also argues that the separation of powers doctrine set out in Article III, § 42, of the Alabama Constitution of 1901, prohibits the juvenile court from directing the placement of the children because to do so usurps the function of DHR.
In his answer, the guardian ad litem asserts that § 12-15-321"provides a check on the executive power of [DHR] in order to monitor children where their parent's parental rights have been terminated." The guardian ad litem further asserts that, pursuant to § 12-15-101(a), Ala. Code 1975, the juvenile court has a duty to facilitate the care and protection of children and that, pursuant to § 12-15-321, the juvenile court exercised its authority to ensure that DHR follows its own policies.[3]
In Ex parte Alabama Department of Human Resources, 154 So.3d 1060 (Ala. Civ. App. 2014) (abrogated on other grounds by S.H. v. Macon County Department of Human Resources, 195 So.3d 311 (Ala. Civ. App. 2015) ), relied upon by DHR, this court explained:
" Section 12-15-321 authorizes a juvenile court to hold periodic permanency hearings regarding a child in the permanent legal custody of 'the Department of Human Resources' following the termination of parental rights. Nothing in § 12-15-321, however, bestows upon a juvenile court the power to determine the permanency plan for the child, which power it does have under § 12-15-315, Ala. Code 1975, before parental rights are terminated. To the contrary, § 12-15-321 specifically provides that a juvenile court may only 'review the circumstances of the child to determine what efforts have been made to achieve permanency for the child.' In other words, the purpose of a permanency hearing *217 under § 12-15-321 is not to determine the appropriate permanent placement of the child, but to ensure that 'the Department of Human Resources' is using reasonable efforts to achieve the permanency plan it has formulated for the child under the authority granted to it by § 12-15-320(b)."
154 So.3d at 1065 (footnote omitted).
As explained above in Ex parte Alabama Department of Human Resources, the provisions of § 12-15-315, Ala. Code 1975, providing for a permanency review by the juvenile court before the termination of parental rights, differs from the provisions of § 12-15-321, providing for a permanency review hearing that is held after a termination of parental rights. 154 So.3d at 1065. See, e.g., Ex parte Montgomery Cty. Dep't of Human Res., 10 So.3d 31, 38 (Ala. Civ. App. 2008) (explaining that, in a case involving a dependent child in DHR's custody, the juvenile court may after giving DHR an opportunity to "carry out its legislative mandate" dictate to DHR how to care for a child in its custody if it determines that DHR's plan is not serving a child's best interest); see also In re Morris, 491 So.2d 244, 246 (Ala. Civ. App. 1986) (explaining that, in a case involving a child committed to the custody of the Alabama Department of Mental Health, a juvenile court has the authority to review a State agency's care of a child committed to its custody and to direct the agency to change the child's care if the court determines that care is not serving the child's best interest). In this case, § 12-15-321 applies because the parental rights of the parents have been terminated and DHR has permanent legal custody of the children.
In its permanency review orders, the juvenile court specifically found that DHR had "failed to use reasonable efforts to achieve the permanency plan developed for the minor child[ren]." The juvenile court, however, further found that "it is in the best interest of [A.S.H.] that she be placed in a therapeutic foster home" and that "it is in the best interest of [T.K.H.] that she be placed in a pre-adoptive foster home with [A.S.H.] immediately." As explained above, "the purpose of a [post-termination] permanency hearing under § 12-15-321 is not to determine the appropriate permanent placement of the child, but to ensure that 'the Department of Human Resources' is using reasonable efforts to achieve the permanency plan it has formulated for the child under the authority granted to it by § 12-15-320(b)." Ex parte Alabama Dep't of Human Res., 154 So.3d at 1065. Based on § 12-15-321, § 12-15-320(b)(1), and Ex parte Alabama Department of Human Resources, supra, the juvenile court exceeded its statutory authority and invaded DHR's authority insofar as it purported to override DHR's permanency plan by directing particular placements for the children in its permanency review orders.[4] Accordingly, DHR is entitled to the issuance of a writ of mandamus on this issue.
DHR next argues that the permanency review orders are "in conflict with the mandates of the Foster Parents' Bill of Rights" contained in § 38-12A-2, Ala. Code 1975. Section 38-12A-2 provides that "[t]he Department of Human Resources shall ensure that each foster parent shall have all of the ... rights" enumerated within that section. That section does not create a duty of the juvenile court with *218 respect to foster parents. See, e.g., B.V. v. Davidson, 77 So.3d 1187, 1194 (Ala. Civ. App. 2010) (explaining that "the Foster Parents' Bill of Rights places a duty on DHR to treat foster parents with respect and dignity. That duty may be carried out only by the individual members of DHR, whether at the state or county level."). We further note that, to the extent DHR attempts to raise a challenge on behalf of the children's foster parents, we will not consider that argument. See Ex parte Izundu, 568 So.2d 771, 772 (Ala. 1990) (holding that an individual does not have standing to assert the rights of a third party).
DHR next argues that the permanency review orders, insofar as they order Nancy Buckner, the Commissioner of the State Department of Human Resources ("the Commissioner"), to perform certain duties, are in conflict with § 38-2-3, Ala. Code 1975, which establishes the office and duties of the DHR Commissioner, and the separation-of-powers doctrine of the Alabama Constitution.
The Commissioner is "the executive and administrative officer of the state department and shall exercise all the rights, powers, duties and authority vested in the state department." § 38-2-3(b). The Commissioner's duties include, among other things, performing "[a]ll administrative and executive duties and responsibilities of the state department," § 38-2-3(b), submitting an annual budget to the state board, and publishing an annual report on the operation and administration of the State Department of Human Resources, § 38-2-3(c). The Commissioner is also required to "interpret policies, rules and regulations formulated by the state board" and to create "such bureaus as are necessary for the effective operation of the public assistance program, and to allocate and reallocate functions among bureaus and departmental agencies." § 38-2-3(d). There is no provision in the statute requiring the Commissioner to interview children.
DHR asserts that the juvenile court's orders requiring the Commissioner to conduct interviews of the children and to be present at the upcoming permanency review hearing "does not comport with her statutory duties," which, DHR asserts, are executive and managerial in nature. DHR asserts that the Commissioner's involvement in this case was relative only to her final decision-making authority on the disposition of a "Conflict Resolution Process" referral that she oversaw.[5]
The guardian ad litem asserts that evidence at the permanency review hearing revealed that the Commissioner might have personal knowledge relevant to the juvenile-court proceedings and that, pursuant to Rule 614(a), Ala. R. Evid., the juvenile court is permitted to compel a witness to appear and give testimony. Although we agree that Rule 614(a) authorizes a court to call witnesses on its own motion, it does not appear that the juvenile court has ordered the Commissioner's appearance for the purpose of taking testimony on a relevant pending issue. In its permanency review orders, the juvenile court stated: "It is FURTHER ORDERED that Nancy Buckner shall personally appear at the next permanency hearing to fully explain to the Court her special interest in this case. It is time for the wizard to come out from behind the curtain."
The materials before us show that the juvenile court's ordering the Commissioner's appearance is not for the purpose of *219 eliciting her testimony. Therefore, compelling the Commissioner to personally attend the hearing appears to be beyond the authority of the juvenile court in conducting the review under § 12-15-321. Our holding is not to be construed as foreclosing a court from compelling the attendance of any witness regardless of job title pursuant to Rule 614(a) for the purpose of testifying to his or her personal knowledge on a relevant pending matter before the court. The materials before us, however, do not show that the orders compelling the Commissioner to attend a hearing was for that purpose.
With regard to the portion of the permanency review orders directing the Commissioner to interview the children, we note that the Commissioner's statutory duties do not encompass such a duty, and we can find no statutory authority permitting the juvenile court to enlarge the Commissioner's duties or to dictate the manner in which the Commissioner performs her statutory duties. The separation-of-powers doctrine "prohibits the judicial branch, through adjudications, from usurping functions dedicated to the executive and legislative branches." Ex parte Bronner, 171 So.3d 614, 621 (Ala. 2014). Accordingly, DHR's petition is due to be granted insofar as it relates to the juvenile court's orders directing the Commissioner to conduct interviews of the children.
DHR also challenges the juvenile court's September 5, 2017, orders denying its motions for transcription of the proceedings. In support of its position, DHR cites Rule 29(B), Ala. R. Jud. Admin., and Ex parte Montgomery County Department Human Resources, 10 So.3d at 38, which interpreted former Rule 20(B), Ala. R. Juv. P., as "clearly provid[ing] that any party to a proceeding in juvenile court is entitled to a transcript of an evidentiary hearing upon requesting it and paying for it." Rule 20, however, has since been amended to provide that a recording of juvenile-court proceedings shall be made and "preserved until the time for taking an appeal has expired and shall not be released except for" the purpose of an appeal or "[u]pon written order of the juvenile court judge, which shall include a specific finding that good cause exists for the creation and release of a transcript of the proceedings." Rule 20(A). Likewise, Rule 29(B), Ala. R. Jud. Admin., has been completely modified to govern the fees and procedures for court reporters; it does not provide a party with a right to a transcript of proceedings. See Ex parte Marshall Cty. Dep't of Human Res., 252 So.3d 1098, ---- (Ala. Civ. App. 2017). DHR has not demonstrated a clear legal right to have the September 5, 2017, orders denying its motions for transcription vacated.
For the foregoing reasons, the juvenile court is directed to vacate the portions of the August 25, 2017, permanency review orders directing placement of the children, ordering the Commissioner to conduct interviews of the children, and ordering the Commissioner to appear at the next permanency review hearing. DHR's petition is denied insofar as it seeks to have this court direct the juvenile court to vacate its orders denying DHR's requests for transcription of proceedings.
2160995-PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
2160996-PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
Thompson, P.J., and Pittman, J., concur.
Moore, J., concurs in part and dissents in part, with writing, which Thomas, J., joins.
*220 I concur in that part of the main opinion concluding that the Limestone County Department of Human Resources ("the Limestone County DHR") cannot raise any issues regarding an alleged violation of the Foster Parents' Bill of Rights and that the Limestone Juvenile Court ("the juvenile court") exceeded its authority in ordering Nancy Buckner, the commissioner of the Alabama Department of Human Resources ("the State DHR"), to interview A.S.H. and T.K.H. ("the children"). I respectfully dissent as to the remaining parts of the main opinion.
I do not view this case as involving any usurpation of power by the juvenile court. In my opinion, the juvenile court did not assume the authority to alter the permanency plan for the children established by the Limestone County DHR in conjunction with the State DHR, which remains to this day adoption by their respective foster parents. The juvenile court ordered that the current living arrangements of the children be modified so that A.S.H. could reside in a therapeutic foster home and T.K.H. could maintain a meaningful relationship with her sister until they are adopted. Notably, the juvenile court found that, at least at one point, the Limestone County DHR had established a plan for such arrangements. Nothing in the petition filed by the Limestone County DHR directly attacks the authority of the juvenile court to make such interim placement orders; instead, its arguments are limited solely to the proposition that the juvenile court lacks the statutory authority and the constitutional power to change the permanency plan for the children.
In my opinion, the juvenile court also has the authority, pursuant to Rule 614(a), Ala. R. Evid., to order Nancy Buckner, the commissioner of the State DHR, to appear for a hearing. In its orders, the juvenile court finds that Buckner has personally intervened in the cases to prevent the placement of A.S.H. in a therapeutic foster home and to prevent contact between the children. The juvenile court further finds that Buckner has taken such actions in violation of the policies of the State DHR that, as the commissioner of the State DHR, she is required to enforce. The orders indicate that the juvenile court intends to question Buckner to have her explain her and the State DHR's actions as part of the juvenile court's authority and duty under Ala. Code 1975, § 12-15-321, to review the efforts taken by the State DHR to achieve the permanency plan established for the children. The Limestone County DHR has not presented in its mandamus petition any clear legal authority that exempts the commissioner from testifying under these circumstances.
Finally, I believe that the Limestone County DHR presented good cause for its request for the transcripts of the termination-of-parental-rights trial and the permanency review hearing. The Limestone County DHR informed the juvenile court that it planned to appeal or to file a petition for a writ of mandamus and that it needed the transcripts to support its positions. The Limestone County DHR needed the transcripts in order to more fully inform this court of the underlying facts giving rise to the juvenile court's August 25, 2017, orders. Perhaps if this court were privy to all the evidence, my opinion would be different. Therefore, I believe that the juvenile court exceeded its discretion in refusing to order the transcripts.
Thomas, J., concurs.

With minor alterations, we have quoted the order entered in A.S.H.'s case. The orders are distinguishable only insofar as the order entered in A.S.H.'s case contains additional language to refer to A.S.H.'s foster family and circumstances; that information was not contained in the order in T.K.H.'s case.

We note that DHR's motions were directed to nonfinal orders, and, thus, were not filed pursuant to Rule 59, Ala. R. Civ. P.

Section 12-15-101(a) provides that the purpose of the Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala. Code 1975, "is to facilitate the care, protection, and discipline of children who come under the jurisdiction of the juvenile court, while acknowledging the responsibility of the juvenile court to preserve the public peace and security."

Although it is unclear what recourse a juvenile court has once it determines, pursuant to § 12-15-321, that a department of human resources has not exerted appropriate efforts aimed at achieving permanency for a child in its permanent legal custody, we are not called upon to answer that question, which is a question better answered by the legislature.

DHR asserts that the "Conflict Resolution Process" was developed pursuant to the Foster Parents' Bill of Rights.