PER CURIAM.
 

 Nancy Buckner, Commissioner of the Alabama Department of Human Resources; Terry Benton, Director of the Montgomery County Department of Human Resources; John Houston, Commissioner of the Alabama Department of Mental Health; Donald E. Williamson, M.D., State Health Officer and Director of the Alabama Department of Public Health; J. Walter Wood, Executive Director of the Alabama Department of Youth Services; Joseph Morton, State Superintendent of
 
 *687
 
 Education; and Donna Glass, Director of the Alabama Multi-Needs Child Office (collectively “the State agents”), petition this court for a writ of mandamus directing the juvenile-court judge presiding over the consolidated actions below to comply with the mandate of this court’s decision in
 
 Ex parte Montgomery County Department of Human Resources,
 
 10 So.3d 31 (Ala.Civ.App.2008)
 
 (“D.R.S.
 
 /”), and to recuse herself. We grant the petition in part and deny the petition in part.
 

 In
 
 D.R.S. I,
 
 we summarized the history of case no. JU-93-102 in the Montgomery Juvenile Court (“the juvenile-court action”), which involves the care of D.R.S., up to the time of that decision:
 

 “D.R.S. is deaf and mentally retarded. She also suffers from diabetes, mental illness, and alopecia. The record indicates that the juvenile court has exercised jurisdiction over D.R.S. for a number of years. During some of those years, D.R.S. was in the legal custody of various relatives. The most recent proceedings involving D.R.S. began on May 23, 2007, when the [Montgomery County Department of Human Resources (‘the County DHR’) ] petitioned the juvenile court to find that D.R.S., who was then in the legal custody of her paternal aunt, was dependent and to award custody of D.R.S. to the County DHR. Upon the filing of the County DHR’s petition, the juvenile court appointed an attorney to serve as D.R.S.’s guardian ad litem. On May 30, 2007, following an expedited hearing, the juvenile court found that D.R.S. was dependent and granted the County DHR legal custody of D.R.S.
 

 “The County DHR made arrangements for D.R.S. to reside temporarily at the [National Deaf Academy (‘the NDA’) ] while it sought joint-agency funding from the ‘State Multiple Needs Team’ for a long-term placement for D.R.S. On June 15, 2007, the juvenile court entered an order requiring the County DHR to give the juvenile court 30 days’ written notice of any proposed change in D.R.S.’s placement.
 

 “On June 22, 2007, the [Alabama Department of Human Resources (‘the State DHR’) ], acting on behalf of the County DHR (hereinafter sometimes collectively referred to as ‘DHR’), notified the juvenile court in writing of the County DHR’s intent to change D.R.S.’s placement from the NDA to Baypointe Children’s Residential Services (‘Bay-pointe’) in Mobile, Alabama, and moved the juvenile court to amend its June 15, 2007, order to allow the change in placement immediately. As grounds for seeking the immediate change in placement, DHR alleged that Baypointe could provide services that were equivalent to the NDA; that the State Multiple Needs Team had approved joint-agency funding for residential placement of D.R.S. at Baypointe at a cost not to exceed $435 per day from the date of admission through September 30, 2007; and that Baypointe then had a space available for D.R.S. but that it might not have space available at a later date. The motion was accompanied by a brief asserting that the juvenile court lacked authority to condition placement of D.R.S. on the juvenile court’s prior approval; that the constitutional doctrine of separation of powers prohibited the juvenile court from preventing the placement of D.R.S. at Baypointe; that the juvenile court lacked the authority to control the expenditure of State funds by directing that State agencies place D.R.S. at a particular facility; that the juvenile court lacked authority to require State agencies to incur the cost of providing care for a child at a private facility; and that the counties of the State are statutorily responsible for the care of indi
 
 *688
 
 gent children directed by a juvenile court.
 

 “An entry made by the juvenile court . on the case-action summary on June 26, 2007, indicates that on that date the juvenile court held a hearing on DHR’s motion to amend the juvenile court’s June 15, 2007, order and made a finding that it was not in the best interest of D.R.S. to be moved from the NDA.
 

 “On July 27, 2007, the guardian ad litem moved the juvenile court to find the County DHR in contempt. As grounds, the guardian ad litem alleged, among other things, (1) that the County DHR had moved D.R.S. to Baypointe on July 25, 2007; (2) that, contrary to DHR’s representations to the juvenile court, Baypointe did not provide services that were equivalent to those provided by the NDA; and (3) that Baypointe was an unsuitable placement for D.R.S. The County DHR denied the allegations in the guardian ad litem’s motion.
 

 “Following an evidentiary hearing, the juvenile court entered the November 13 order. That order found that D.R.S. had thrived while she was at the NDA and that she had been mistreated while she was at Baypointe. Based on those findings, the juvenile court in its November 13 order concluded, in pertinent part:
 

 “ 1. That the Court specifically finds that the Alabama Department of Human Resources has not made reasonable efforts to assure the health, safety and educational and medical needs of [D.R.S.] by placing her at Baypointe. Despite DHR’s assertion that this Court cannot tell DHR where to place a child, the Court believes that when DHR fails or refuses to protect a child from harm or mistreatment, the Circuit Court must step in to stop the continued medical maltreatment, over-medication and personal violations of [D.R.S.]
 

 “ ‘2. That [D.R.S.] shall be immediately transported to Mt. Dora, Florida to the National Deaf Academy (or other facility equivalent to the National Deaf Academy) where she shall remain
 
 at the expense of the State of Alabama
 
 until such time as she is able to function and communicate independently. It is undisputed that presently Alabama has no such facility within its borders.
 

 [[Image here]]
 

 “ ‘7. That the Court orders that Mrs. Liz Hill be reinstated as therapist for [D.R.S.] by [the Department], so as to allow her to continue her work with this multi-needs child. Ms. Hill has clearly made progress and has achieved a level of trust which cannot be duplicated quickly. It cannot be in this child’s best interest to have Ms. Hill summarily removed from interaction with [D.R.S.]’
 

 “(Emphasis added.)
 

 “.... DHR then petitioned this court to issue a writ of mandamus.”
 

 10 So.3d at 33-35.
 

 In
 
 D.R.S. I,
 
 we held that Montgomery County was responsible for paying for D.R.S.’s care:
 

 “The petitioners first argue that they have a clear legal right to a writ of mandamus directing the juvenile court to vacate its November 13 order insofar as that order required the State of Alabama to pay the expenses of D.R.S. at the NDA. The petitioners assert that § 12-15-10, Ala.Code 1975, and the separation-of-powers provisions of the Alabama Constitution mandate that Montgomery County rather than the State of Alabama is the entity responsible for the cost of D.R.S.’s care. We agree.
 

 
 *689
 
 “Section 12-15-10, a part of the Alabama Juvenile Justice Act, which deals with proceedings in the juvenile court, provides, in pertinent part:
 

 “ ‘All expenses necessary or appropriate to the carrying out of the purposes and intent of this chapter and all expenses of maintenance and care of children that may be incurred by order of the court in carrying out the provisions and intent of this chapter, except costs paid by parents, guardians, or trustees, court costs as provided by law and attorney fees shall be valid charges and preferred claims against
 
 the county
 
 and shall be paid by the county treasurer when itemized and sworn to by the creditor or other persons knowing the facts in the case and approved by the court.’
 

 “(Emphasis added.)
 

 “In
 
 Ex parte Department of Mental Health,
 
 511 So.2d 181 (Ala.1987), the Alabama Supreme Court held that an order of the Houston Juvenile Court directing the Department to place a child at Charter Woods Hospital, a private facility, for a psychiatric evaluation to be paid for by the Department violated § 12-15-10 and the separation-of-powers provisions of the Alabama Constitution. The court stated:
 

 “ ‘[In § 12-15-10], the Legislature expressly designates the county as the entity responsible for maintenance and care. Therefore, according to our statutory scheme, the county, not the State or a department thereof, is responsible for any monies due Charter Woods Hospital.
 

 “ ‘The Court of Civil Appeals’ judgment ordering [the Department] to pay for the child’s care and treatment not only runs afoul of § 12-15-10, but also violates §§ 42 and 43 of the Constitution of Alabama of 1901, which sections deal with the doctrine of separation of powers.
 

 “ ‘Although the Legislature granted authority to the juvenile courts to commit children to the custody of [the Department] and authority to avail themselves of the facilities and personnel of [the Department], the Legislature did not confer upon the juvenile courts the authority to commit a child to the custody of [the Department] and then order that the child be placed in a
 
 private
 
 psychiatric facility. See Code of Alabama 1975, § 12-15-90. Had the Legislature intended to grant authority to juvenile courts to commit a child to the custody of [the Department] and then order that the child be placed in a private psychiatric facility at the expense of [the Department], it would have been a simple matter for the Legislature to so provide. The Legislature’s power to determine the appropriations for each state agency cannot be usurped by either of the other branches of government. [The Department] is mandated by the Legislature to act, through its commissioner, “in any prudent way to provide mental health services ... for the people of Alabama.”
 
 Code of Alabama
 
 1975, § 22-50-1,
 
 et seq.
 
 [The Department] is therefore charged by the Legislature to accept minors alleged to be mentally ill and treat them by means of its various programs and facilities. Nowhere in any of these statutes does the Legislature state that anyone other than [the Department] is authorized to care for and treat these children.
 

 “‘Furthermore, in
 
 In re McCain,
 
 348 So.2d 780 (Ala.1977), this Court was presented with a situation substantially similar to the one
 
 sub judi-ce.
 
 There, the trial court had made McCain a ward of the court, placed him in an out-of-state mental health center, and required [the Department]
 
 *690
 
 to pay for McCain’s care and treatment. In striking down the court’s order, this Court stated:
 

 “ ‘ “To allow this provision of Judge Davis’s order to stand would allow the unrecoverable expenditure of State funds from an appropriation not intended for child care and from which Judge Davis has no authority to direct expenditure of funds for child care.”
 

 “ ‘348 So.2d at 782. The rationale behind this Court’s decision in
 
 McCain
 
 is equally sound in this case. We find no merit in the argument that the case before us is distinguishable from
 
 McCain
 
 because of the fact that in
 
 McCain,
 
 the Court labeled as “court costs” the amount to be paid by [the Department]. Whatever their designation, costs for care and treatment of a minor placed in a private institution cannot be charged to [the Department]. Therefore, that portion of the Court of Civil Appeals’ opinion that held [the Department] responsible for the child’s expenses while he was in Charter Woods Hospital is erroneous and it is hereby reversed.’
 

 “511 So.2d at 183-84.
 
 See also In re N.D.M.,
 
 837 So.2d 316 (Ala.Civ.App.2002) (holding that the county must pay the expenses of an indigent minor committed to the custody of the Department);
 
 In re D.M.,
 
 738 So.2d at 901 (plurality opinion) (stating that ‘[o]ur supreme court has held that neither § 12-15-71 (c)(4) nor § 12-15-70 authorizes the juvenile court to require a department of the state, as opposed to its counties, to pay for mental health treatment of the child when the parents or other persons legally obligated to care for the child cannot’);
 
 Alabama Dep’t of Mental Health & Mental Retardation v. State,
 
 718 So.2d 74, 76 (Ala.Civ.App.1998) (stating that ‘Ala.Code 1975, § 12-15-10, requires the appropriate county to bear the expense for care and treatment of indigent juveniles’);
 
 Ex parte State Dep’t of Human Res.,
 
 716 So.2d 717, 718 (Ala.Civ.App.1998) (stating that ‘if the child’s parents, guardians, or trustees are unable to pay the medical expenses, the
 
 county
 
 is obligated to do so’);
 
 Ex parte State Dep’t of Mental Health & Mental Retardation,
 
 555 So.2d 1132, 1133 (Ala.Civ.App.1989) (stating that ‘if the child’s parents or others legally obligated are financially unable to pay such expenses, the
 
 county
 
 is statutorily obligated to do so’); and
 
 In re T.L.H.,
 
 607 So.2d 295 (Ala.Civ.App.1992) (same).
 

 “The petitioners have established their right to a writ of mandamus directing the juvenile court to vacate its November 13 order insofar as that order required the State of Alabama to pay the expense of placing D.R.S. at the NDA.”
 

 10 So.3d at 35-37.
 

 After this court issued its certificate of judgment in
 
 D.R.S. I,
 
 the Montgomery County Department of Human Resources (“the County DHR”), on March 18, 2009, moved the juvenile-court judge for an order directing the Montgomery County Commission to pay the bills submitted by the National Deaf Academy (“the NDA”) for its care of D.R.S. pursuant to § 12-15-108, Ala.Code 1975, and our holding in
 
 D.R.S. I.
 
 Attached to the County DHR’s motion were bills submitted by the NDA for the period December 1, 2007, through December 31, 2008. Those bills totaled $224,055.
 

 On February 10, 2009, the Montgomery County Commission sued the State agents and the NDA in the Montgomery Circuit Court (“the circuit court”), seeking a judgment determining who was obligated to pay for the care of D.R.S. and the care of other residents of Montgomeiy County by the NDA. The circuit court docketed that
 
 *691
 
 action (“the county’s action”) as CV-09-204.
 

 On March 19, 2009, the NDA sued the State agents and Montgomery County in the circuit court, seeking a writ of mandamus compelling the State agents or, in the alternative, Montgomery County to pay the NDA for its care of D.R.S. The circuit court docketed that action (“the NDA’s action”) as CV-09-900341.
 

 Motions to consolidate the county’s action and the NDA’s action with the juvenile-court action were filed. After the circuit-court judges presiding in the county’s action and the NDA’s action deferred to the juvenile-court judge with respect to those motions, the juvenile-court judge entered an order stating that the county’s action and the NDA’s action were “consolidated into the Juvenile Court case”; “[hjowever, so as to avoid confusion, the [county’s action and the NDA’s action] shall be heard separately from the ongoing juvenile[-court action].”
 

 The State agents moved to dismiss the claims asserted against them by Montgomery County and the NDA on the ground that Montgomery County was the proper party to pay the NDA for its care of D.R.S.; however, the juvenile-court judge denied those motions. The juvenile-court judge also appointed the attorney she had designated as her campaign-finance coordinator to represent D.R.S. in the consolidated actions. Thereafter, the State agents moved for recusal of the juvenile-court judge. When no ruling on their motion seeking recusal was forthcoming, the State agents petitioned this court for a writ of mandamus directing the juvenile-court judge to recuse herself and to comply with this court’s mandate in
 
 D.R.S. I
 
 insofar as we held that Montgomery County was the proper entity to pay the NDA for its care of D.R.S. While the mandamus petition was pending in this court, the attorney whom the juvenile-court judge had appointed to represent D.R.S. in these consolidated actions moved this court for leave to withdraw from that representation, and this court granted that motion.
 

 The supreme court stated the standard for the issuance of a writ of mandamus in
 
 Ex parte Integon Corp.,
 
 672 So.2d 497, 499 (Ala.1995):
 

 “Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
 

 In
 
 Ex parte Alabama Power Company,
 
 431 So.2d 151, 155 (Ala.1983), the supreme court, quoting 5 Am.Jur.2d
 
 Appeal and Error
 
 § 991 (1962), stated:
 

 “ ‘It is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court. No judgment other than that directed or permitted by the reviewing court may be entered .... The appellate court’s decision is final as to all matters before it, becomes the law of the case, and must be executed according to the mandate, without granting a new trial or taking additional evidence....’”
 

 In
 
 D.R.S. I,
 
 we made it clear that, under Alabama law, Montgomery County is the entity responsible for paying for the NDA’s care of D.R.S. Compliance with that mandate required that the juvenile-court judge grant the State agents’ motions to dismiss the claims asserted against them by Montgomery County and the NDA. Accordingly, we hold that the State agents have established a clear legal right to an order granting those motions to dismiss, an imperative duty on the part of the
 
 *692
 
 juvenile-court judge to grant those motions and a refusal to do so, the lack of another adequate remedy, and the properly invoked jurisdiction of this court. Accordingly, we grant the State agents’ petition insofar as it seeks a writ of mandamus directing the juvenile-court judge to dismiss the claims asserted against them by Montgomery County and the NDA.
 

 Because the State agents are entitled to have their motions seeking dismissal of the claims asserted against them by Montgomery County and the NDA granted, their petition is moot insofar as it seeks a writ of mandamus compelling the juvenile-court judge to recuse herself.
 

 PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
 

 All the judges concur.