MAIN, Justice.
The Montgomery County Commission (“the County”) and the National Deaf Academy, LLC (“the Academy”), the plaintiffs in separate actions pending in the Montgomery Juvenile Court,[1] petition this Court for a writ of mandamus directing the Court of Civil Appeals to quash the writ of mandamus issued to the juvenile court in Ex parte Buckner, 73 So.3d 686 (Ala.Civ.App.2010). We grant the petitions and issue the writs.

I. Factual Background

D.R.S. was born in 1990. She suffers from deafness, mental retardation, diabetes, mental illness, and alopecia. D.R.S. first became involved with the juvenile court system when she was charged with a criminal misdemeanor because of acting-out behavior in a placement arranged for her by the Montgomery County Department of Human Resources (“MCDHR”). On May 23, 2007, MCDHR petitioned the Montgomery Juvenile Court to have D.R.S. placed in a mental-health facility that served deaf clients. On May 30, the juvenile court awarded legal custody of D.R.S. to MCDHR, and MCDHR created an individualized service plan, or “ISP,” for her. The Alabama Children’s Services Facilitation Team (“the State Team”) agreed that the Alabama Department of Human Resources (“State DHR”) was to fund D.R.S.’s placement at the Academy’s facility in Florida[2] until the State Team could allocate the financial responsibility for her.
*694 The executive council of the State Team consists of the heads of the Department of Education, the Department of Human Resources, the Department of Mental Health, the Department of Public Health, and the Department of Youth Services. § 12-15-504, Ala.Code 1975. The legislature established the executive council to exercise general supervision over the State Team, which consists of a representative appointed by each of the Department of Education, the Department of Human Resources, the Department of Mental Health, the Department of Public Health, the Department of Youth Services, and the Chief Probation Officers Association. § 12-15-505(a), Ala.Code 1975. The State Team is responsible for developing and implementing interagency plans for statewide services for multiple-needs children and for allocating resources to implement those plans for services and treatment of those children with funds in the State Multiple Needs Children Fund established by § 12-15-508, Ala.Code 1975 (“the Fund”). § 12-15-505(e)(l) and (2), Ala.Code 1975. The Fund is used to provide services not otherwise provided by State departments or agencies for multiple-needs children.[3] § 12-15-508(b). D.R.S. has been classified as a multiple-needs child.
Pursuant to § 12-15-503, Ala.Code 1975, a county children’s services facilitation team (“the county team”) is responsible for developing a plan of services addressing the requirements of a multiple-needs child and the respective financial responsibilities of agencies and departments constituting this team.[4] Once a juvenile court has deemed a child to be a multiple-needs child, the county team is responsible for implementing any service plan ordered. § 12-15-503, Ala.Code 1975. When a county team makes a referral, the State Team is required to develop a plan for the multiple-needs child that is then binding on the county team. § 12-15-505(e)(4), Ala.Code 1975.
MCDHR made arrangements for D.R.S. to reside temporarily at the Academy’s facility while it sought funding from the State Team for a long-term placement for her. MCDHR placed D.R.S. at the Academy’s facility on June 1, 2007, and advised the juvenile court that she had been denied funding by the State Team because she had not received a comprehensive psychiatric and medical evaluation at The Children’s Hospital of Alabama in Birmingham. MCDHR further advised the juvenile court that D.R.S.’s guardian ad litem did not agree with the requirement that D.R.S. undergo a comprehensive psychiatric and medical evaluation because she had previously been evaluated at another hospital. MCDHR stated that it would coordinate with the Academy to obtain a comprehensive assessment of D.R.S. within the next 30 days and then request reconsideration by the State Team for funding to assist in D.R.S.’s care. On June 15, 2007, the juvenile court entered an order requiring MCDHR to give the juvenile court 30 days’ written notice of any proposed change in D.R.S.’s place *695 ment. On June 22, 2007, the State DHR, acting on behalf of MCDHR, notified the juvenile court that MCDHR intended to move D.R.S. to BayPointe Children’s Residential Services in Mobile. The State DHR reported that funding for D.R.S.’s placement at BayPointe had been approved by the State Team at a cost not to exceed $485 per day beginning on the date of admission through September 30, 2007, and that the costs would be shared equally between four agencies — the State DHR, the Department of Youth Services, the Department of Education, and the Department of Mental Health. On June 26, 2007, the juvenile court found that it was not in D.R.S.’s best interests to be moved from the Academy’s facility to BayPointe. Nevertheless, on July 25, MCDHR removed D.R.S. from the Academy’s facility and placed her at BayPointe. On July 27, D.R.S.’s guardian ad litem objected and contended that BayPointe was not a suitable placement for D.R.S.
On September 5, 2007, MCDHR paid the Academy $26,250 for services the Academy had rendered to D.R.S. On September 16, MCDHR issued a letter addressed “To Whom It May Concern,” stating that MCDHR had temporary custody of D.R.S. and further stating that MCDHR would be “financially responsible for expenses which include but are not limited to clothing supplies, medical costs/medications, hygiene costs, travel/travel cost, etc., while [D.R.S.] is in out of state placement.” On September 26, MCDHR paid the Academy an additional $550 to satisfy the amount outstanding at that time for services it had rendered to D.R.S. On November 2, 2007, MCDHR contacted the Academy about readmitting D.R.S. On November 5, MCDHR requested a rate quote for D.R.S. from the Academy. In response, the Academy informed MCDHR that D.R.S. had been accepted into its residential-treatment program at a rate of $525 per day for room, board, and psychiatric services, plus an additional $150 per school day for educational services.
The juvenile court held a two-day evi-dentiary hearing in November 2007 on whether to relocate D.R.S. to the Academy’s facility in Florida. On November 13, the juvenile court ordered that D.R.S. was to be transported back to the Academy’s facility in Florida or another equivalent facility and that she was to remain at the Academy’s facility or the equivalent facility “at the expense of the State of Alabama until such time as she is able to function and communicate independently.” The juvenile court also ordered D.R.S.’s guardian ad litem and her probation officer to monitor her progress at the Academy’s facility and to report back to the court and ordered that D.R.S.’s former therapist be reinstated. MCDHR filed a motion with the juvenile court to authorize the court reporter to provide it with a transcript of the hearing, but the juvenile court denied the motion.
On November 15, 2007, the Alabama Multiple Needs Child Office notified the Academy that the State Team had approved funding for D.R.S.’s placement at the Academy’s facility from November 19, 2007, to February 28, 2008. On November 19, D.R.S. was readmitted to the Academy’s facility in Florida. On December 4, the State DHR issued an Interstate Compact Transmittal Memorandum, pursuant to the Interstate Compact on the Placement of Children (“ICPC”), enclosing an ICPC Form 10OA, stating that the “Name of Agency or Person Financially Responsible for Child” was “Alabama State Department of Human Resources.” After D.R.S. was readmitted, the Academy initially submitted its monthly invoices to the Alabama Multiple Needs Child Office and later submitted those invoices to MCDHR.
*696 On November 26, 2007, MCDHR and the State DHR (hereinafter referred to collectively as “the DHR petitioners”) filed a petition for a writ of mandamus in the Court of Civil Appeals, seeking review of the juvenile court’s order of November 13, 2007. Neither the County nor the Academy was a party to this proceeding. The DHR petitioners sought to have the November 13 order vacated insofar as it directed that D.R.S. be placed at the Academy’s facility in Florida or at an equivalent facility, that the State of Alabama pay the costs of D.R.S.’s placement, and that D.R.S.’s former therapist be reinstated. The DHR petitioners also sought to have the juvenile court’s order denying it a transcript of the evidentiary hearing vacated. On May 23, 2008, the Court of Civil Appeals granted the DHR petitioners’ petition in part and denied it in part. Ex parte Montgomery County Dep’t of Human Res., 10 So.3d 31, 38 (Ala.Civ.App.2008) {“MCDHR P’).
The Court of Civil Appeals in MCDHR I first held that the DHR petitioners established their right to a writ of mandamus directing the juvenile court to vacate its November 13 order insofar as the order required the State to pay D.R.S.’s expenses at the Academy’s facility, citing § 12-15-10, Ala.Code 1975, which designates the county as the entity responsible for the maintenance and care of an indigent juvenile, and Ex parte Department of Mental Health, 511 So.2d 181 (Ala.1987), in which this Court held that a court order directing the Department of Mental Health to place a child at a private facility for a psychiatric evaluation to be paid for by the Department of Mental Health violated § 12-15-10 and the separation-of-powers provisions of the Alabama Constitution of 1901. 10 So.3d at 35-36. The court next held that the DHR petitioners did not establish their right to a writ of mandamus directing the juvenile court to vacate its November 13 order insofar as the order required that D.R.S. be placed at the Academy’s facility and her former therapist be reinstated; it further held that the juvenile court did not dictate to the DHR petitioners how they were to care for D.R.S. without first giving them the opportunity to carry out their legislative mandate and noted that a juvenile court has the authority to review a State agency’s care of a child committed to its custody and to direct the agency to change a child’s care if the court finds that the care provided by the agency is not in the child’s best interests. 10 So.3d at 37-39. Finally, the court held that the DHR petitioners were entitled to a writ of mandamus ordering the juvenile court to vacate its order denying them a transcript of the evidentiary hearing. 10 So.3d at 39^0.
The DHR petitioners[5] then petitioned this Court for a writ of certiorari seeking to have this Court review the transcript of the evidentiary hearing and the record from the Court of Civil Appeals and for a writ of mandamus seeking to have this Court review the Court of Civil Appeals’ decision in MCDHR I with the benefit of the transcript of the evidentiary hearing that was not before the Court of Civil Appeals. This Court denied the petition, holding that the DHR petitioners waived their argument that it was necessary for this Court to review the transcript of the evidentiary hearing, despite the absence of the transcript from the record when the Court of Civil Appeals reviewed the merits of the juvenile court’s decision; the DHR petitioners did not argue that the Court of *697 Civil Appeals erred in reaching the merits without the transcript. Ex parte Montgomery County Dep’t of Human Res., 10 So.3d 41 (Ala.2008) (“MCDHR II”).
On February 10, 2009, the County filed a declaratory-judgment action in the Montgomery Circuit Court, naming as defendants officials of MCDHR, the State DHR, and the other agencies constituting the State Team (collectively “the State agents”). The County sought a determination as to which entity had the duty to pay D.R.S.’s expenses at the Academy’s facility. MCDHR then filed a motion in the juvenile court requesting an order declaring that the County was responsible for the payment of D.R.S.’s expenses at the Academy’s facility and ordering the County to pay those expenses. On March 19, 2009, the Academy filed a complaint in the Montgomery Circuit Court asserting several claims against the County and the State agents regarding the financial responsibility for D.R.S.’s expenses at the Academy’s facility and seeking a judgment ordering the County to pay her expenses. The Academy’s action was consolidated with the County’s action before Judge Patricia Warner, the judge presiding over the then pending juvenile proceeding concerning D.R.S.
On June 26, 2009, MCDHR filed in the Court of Civil Appeals a motion to enforce the writ of mandamus issued by that court in MCDHR I. MCDHR contended in that motion that the court had already issued a writ of mandamus in its 2008 decision in MCDHR I “specifically holding that the Montgomery County Commission is responsible for payments for the cost of care of [D.R.S.].” On August 25, 2009, the Court of Civil Appeals entered an order denying MCDHR’s motion.
After the parties filed various motions in both declaratory-judgment actions, the State agents filed a joint motion requesting that Judge Warner recuse herself from the proceedings. They argued that Judge Warner was biased against them because she had not followed the mandate of the 2008 decision of the Court of Civil Appeals in MCDHR I by ordering the County to pay D.R.S.’s expenses at the Academy’s facility and that one of the lawyers for D.R.S. was Judge Warner’s campaign coordinator in her circuit judgeship race. On April 27, 2010, MCDHR again filed a motion in the juvenile court asking the court to order the County to pay D.R.S.’s outstanding expenses at the Academy’s facility of $432,325. The County opposed the motion, arguing that it was not a party to the proceedings that resulted in the issuance of the opinion in MCDHR I in 2008 and, therefore, that the decision was not the law of the case in the County’s declaratory-judgment action. On April 29, the court entered an order continuing the final hearing originally set for May 10, establishing a briefing schedule on the motion to recuse, and setting a hearing for oral arguments on June 14. Also on April 29, the State agents filed a petition for a writ of mandamus in the Court of Civil Appeals asking the court to direct Judge Warner to recuse herself. The State agents later amended the petition to seek a writ of mandamus directing Judge Warner to order the County to pay D.R.S.’s expenses at the Academy’s facility, payment the State agents argued was required by the Court of Civil Appeals in MCDHR I. On September 24, 2010, the Court of Civil Appeals granted the petition and issued the writ, directing the juvenile court to dismiss the declaratory-judgment actions filed by the County and the Academy. Ex parte Buckner, 73 So.3d 686 (Ala. Civ.App.2010). The court held that its decision in MCDHR I was the law of the case, and it directed the juvenile court to dismiss the County’s and the Academy’s *698 actions against the State agents seeking a determination as to which entity is responsible for paying D.R.S.’s expenses at the Academy’s facility.[6] That court stated:
“In Ex parte Alabama Power Company, 431 So.2d 151, 155 (Ala.1983), the supreme court, quoting 5 Am. Jur.2d Appeal and Error § 991 (1962), stated:
“ ‘ “It is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court. No judgment other than that directed or permitted by the reviewing court may be entered .... The appellate court’s decision is final as to all matters before it, becomes the law of the case, and must be executed according to the mandate, without granting a new trial or taking additional evidence....” ’
“In [MCDHR 7], we made it clear that, under Alabama law, Montgomery County is the entity responsible for paying for the [Academy’s] care of [D.R.SJ. Compliance with that mandate required that the juvenile-court judge grant the State agents’ motions to dismiss the claims asserted against them by [the] County and the [Academy]. Accordingly, we hold that the State agents have established a clear legal right to an order granting those motions to dismiss, an imperative duty on the part of the juvenile-court judge to grant those motions and a refusal to do so, the lack of another adequate remedy, and the properly invoked jurisdiction of this court. Accordingly, we grant the State agents’ petition insofar as it seeks a writ of mandamus directing the juvenile-court judge to dismiss the claims asserted against them by [the] County and the [Academy].”
73 So.3d at 691-92. The Court of Civil Appeals also held that because the State agents were entitled to a dismissal of the actions filed by the County and the Academy, the State agents’ petition was moot insofar as it sought a writ of mandamus compelling the juvenile court judge to re-cuse herself.

II. Standard of Review

“This Court reviews de novo the issuance of a writ of mandamus by the Court of Civil Appeals. Rule 21(e), Ala. R.App. P. Review of a writ of mandamus issued by the Court of Civil Appeals is properly sought through a petition for the writ of mandamus to this Court. Rule 21(e), Ala. R.App. P. ‘ “ ‘Mandamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ” ’ Ex parte Sears, Roebuck & Co., 895 So.2d 265[, 268] (Ala.2004) (quoting Ex parte Mardis, 628 So.2d 605, 606 (Ala.1993) (quoting in turn Ex parte Ben-Acadia, Ltd., 566 So.2d 486, 488 (Ala.1990))). ‘The petitioner bears the burden of proving each of these elements before the writ will issue.’ Ex parte Glover, 801 So.2d 1, 6 (Ala.2001) (citing Ex parte Consolidated Publ’g Co., 601 So.2d 423 (Ala.1992)).”
Ex parte Vance, 900 So.2d 394, 397 (Ala.2004).

*699
III. Analysis

The dispositive issue presented by these petitions is whether the Court of Civil Appeals correctly held that its decision in MCDHR I is the law of the case that governs all the parties in the three cases before us. The County and the Academy contend that the Court of Civil Appeals erred when it issued a writ of mandamus directing the juvenile court to dismiss the civil actions filed by the County and the Academy in which they sought to determine which entity is legally responsible for D.R.S.’s expenses at the Academy’s facility. In those civil actions, the County and the Academy assert various claims, arguments, and defenses that were never heard by the Court of Civil Appeals in MCDHR I because the County and the Academy were not parties to the 2008 mandamus proceeding before that court. Nevertheless, the Court of Civil Appeals held in Ex -parte Buckner that its decision in MCDHR I is the law of the case, binding the County and the Academy. If the writ of mandamus issued in Ex parte Buckner is not quashed, the County and the Academy argue, they will be denied the opportunity to present their cases and to develop a full record at the trial level on the issues raised in their actions, and they will be denied the opportunity for appellate review based on that record. In response, the State agents merely insist, without citation to any legal authority, that the Court of Civil Appeals’ decision in MCDHR I is the law of the case in these proceedings.
In United States Fidelity & Guaranty Co. v. Baldwin County Home Builders Ass’n, Inc., 823 So.2d 637, 639-40 (Ala.2001), this Court discussed well settled precedent regarding the law of the case.
“ ‘ “Under the doctrine of the ‘law of the case,’ whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” ’ Southern United Fire Ins. Co. v. Purma, 792 So.2d 1092 (Ala.2001), quoting Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987).”
(Emphasis added.) Clearly, the parties to the actions filed by the County and the Academy are not the same parties as the parties to the juvenile action that was before the Court of Civil Appeals in MCDHR I. Therefore, the law of the case does not apply so as to require the County’s and the Academy’s actions to be dismissed. The County and Academy are entitled to present their claims, arguments, and defenses to the juvenile court for resolution and to seek appellate review from a final judgment if they so choose. The Court of Civil Appeals erred in holding that its decision in MCDHR I is the law of the case as to the County’s and the Academy’s actions.

IV. Conclusion

The County’s and the Academy’s petitions for the writ of mandamus are granted; the Court of Civil Appeals is directed to quash the writ of mandamus it issued on September 24, 2010, in Ex parte Buckner, requiring the juvenile court dismiss the actions filed against the State agents by the County and the Academy. Because the Court of Civil Appeals held that the dismissals of the actions filed by the County and the Academy mooted that portion of the State agents’ petition arguing that the juvenile court judge should recuse herself, the Court of Civil Appeals is further directed to address the recusal issue before it disposes of the mandamus petition. This Court pretermits consideration of the other issues argued by the parties.
*700 1100026 — PETITION GRANTED; WRIT ISSUED.
1100081 — PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and WOODALL, STUART, BOLIN, PARKER, MURDOCK, SHAW, and WISE, JJ., concur.

. The County and the Academy filed their actions in the Montgomery Circuit Court, but they were consolidated with a juvenile case pending in the Montgomery Juvenile Court— The matter of D.R.S., a minor child. All three cases are being heard by the juvenile court judge.

. The Academy’s facility is located in Mt. Dora, Florida. It provides, among other services, educational and therapeutic services to hearing-impaired children.

. Section 12-15-501(2), Ala.Code 1975, defines a multiple-needs child as follows:
"A child coming to the attention of the juvenile court or one of the entities listed herein who is at imminent risk of out-of-home placement or a placement in a more restrictive environment, and whose needs require the services of two or more of the following entities: Department of Youth Services, public school system (services for exceptional needs), Department of Human Resources, Department of Public Health, juvenile probation officers, or Department of Mental Health.”

. The Alabama Juvenile Justice Act provides for the creation of a county team in each county of the State. § 12-15-506(a), Ala. Code 1975.

. The Department of Mental Health, then called the Department of Mental Health and Mental Retardation, joined MCDHR and the State DHR in filing the petition in this Court seeking review of the juvenile court's order.

. By the time the Court of Civil Appeals decided Ex parte Buckner, D.R.S.'s expenses at the Academy's facility exceeded $500,000. This amount remains outstanding, except for occasional reimbursements by MCDHR for clothing and personal items for D.R.S.